(Not for Publication)                                    (Docket Entry No. 164)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

_____
                                                    :
SECURIMETRICS, INC.,                                :
                                                    :
                          Plaintiff,                :      Civil No. 03-04394 (RBK)
                                                    :
                   v.                               :      **OPINION**
                                                    :
IRIDIAN TECHNOLOGIES, INC.,                         :
                                                    :
                          Defendant.                :
_____:

**KUGLER**, District Judge:

         Presently before the Court is Defendant Iridian Technologies, Inc's ("Iridian's") Motion

to Seal (D.E. #164) the following documents: (1) Exhibits A and B and portions of Exhibit D

attached to the Declaration of Jason S. Angell (D.E. #153), and (2) portions of Plaintiff

Securimetrics, Inc.'s ("Securimetrics'") Memorandum in Opposition to Iridian's Motion for

Leave to File a Fourth Amended Answer and Counterclaim (D.E. #152).  For the reasons set

forth below, the Court will deny Iridian's motion.

## I.  BACKGROUND

         The underlying facts of this case have been previously set forth in prior opinions issued

by this Court and Magistrate Judge Ann Marie Donio.  Therefore, the Court will recount only

those facts that directly pertain to the present motion to seal.

         On May 21, 2005, Securimetrics filed a redacted version of its Opposition to Iridian's

Motion for Leave to File a Fourth Amended Answer and Counterclaim.  In support of its opposition, Securimetrics also filed a partially "sealed"[1] version of the Declaration of Jason S. Angell ("Angell Declaration").  The Angell Declaration referred to six exhibits, labeled Exhibits A through F.  However, because Iridian had previously designated the information contained in Exhibits A, B, D, and E as "confidential" or "highly confidential" during discovery, Securimetrics did not electronically file copies of those exhibits along with the Angell Declaration on May 21, 2005.  For the same reason, Securimetrics similarly redacted the portions of its opposition brief which discussed the contents of Exhibits A, B, D, and E.

On the same day Securimetrics filed its redacted opposition and partially "sealed" Angell Declaration, it also filed a "Statement Regarding Materials Filed Under Seal."  In that statement, Securimetrics explained that it did not believe that the redacted information and omitted exhibits should be kept under seal.  Nevertheless, Securimetrics explained that it initially filed the documents as such to abide by the March 22, 2004 Protective Order and to provide Iridian with an opportunity to file a proper motion to seal.[2]

Two days later, on May 23, 2005, Securimetrics filed fully "sealed" versions of the opposition brief and Exhibits A, B, C, D, and E to the Angell Declaration. (See D.E. Nos. 158, 159.)  These fully "sealed" versions contained the previously redacted information and omitted exhibits; however, these versions have never been publicly accessible on the electronic filing

---

[1] The Court references these documents as "sealed" because that is how they were electronically filed by the parties and the Clerk.  However, filed documents are not technically considered sealed until a party files a formal motion to seal and the Court issues an Order permitting the documents to be maintained under seal. See L.Civ. R. 5.3.

[2] The March 22, 2004 Protective Order provides that all filed papers containing Confidential Information or Restricted Confidential Information as defined by the terms of the Protective Order must be filed in a sealed envelope with a notation identifying the filing as a "Document Filed Under Seal."  (See 12/22/04 Protective Order at ¶ 13.)

system.

Shortly thereafter, on June 13, 2005, Iridian filed the present motion to seal (1) Exhibits A and B and a portion of Exhibit D to the Angell Declaration, and (2) the portions of Securimetrics' opposition brief that refer to those exhibits.[3]  Exhibit A to the Angell Declaration consists of excerpts from the deposition testimony of Jon Mooney, Iridian's former outside counsel.  The deposition excerpts relate to the negotiations between the present parties which led to the Iridian-Securimetrics agreements.  Exhibit B contains three documents: (1) a memorandum from Iridian's former Chief Executive Officer, Cletus "Boots" Kuhla ("Kuhla"), to the Iridian Board of Directors outlining his interpretation of the Iridian-Securimetrics agreements; (2) a document from Robert Levin ("Levin"), Iridian's general counsel, which analyzes the Iridian-Securimetrics agreements and provides a different interpretation than that proposed in Kuhla's memorandum; and (3) an email from Erica Intzekostas, Iridian's outside counsel, which agrees with Levin's interpretation of the Iridian-Securimetrics agreements.  Finally, Exhibit D contains excerpts from the Technology License Agreement ("TLA") between Iridian and Securimetrics.  With respect to Exhibit D, Iridian moves only to seal the excerpt from Section 2 of the TLA, which describes the perpetual, irrevocable license grant to Securimetrics.

In response to Iridian's motion to seal, Securimetrics filed a brief in opposition on July 1, 2005.  Securimetrics' brief objects to the sealing of all of the documents at issue in Iridian's motion to seal, including Exhibits A, B, and portions of Exhibit D to the Angell Declaration, as well as those portions of Securimetrics' brief at D.E. #152 which reference those exhibits.

---

[3] Iridian concedes in its motion papers that Section 9 of Exhibit D to the Angell Declaration and Exhibit E to the Angell Declaration are not subject to seal and should be publicly disclosed. (See Def. Mem. at 4-5.)  Therefore, the Court will direct the Clerk to unseal those documents.

## II. DISCUSSION

Local Civil Rule 5.3 governs requests to seal documents filed with the Court.  Under Rule 5.3(c)(2), a party seeking to seal documents must show (a) the nature of the materials at issue; (b) the legitimate private or public interests which warrant the relief sought; (c) the injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available.  In turn, any order or opinion on a motion to seal must make findings as to these factors. L. Civ. R. 5.3(c)(5).

Additionally, where a party moves to seal pretrial motions of a "nondiscovery nature," the moving party must make a showing sufficient to overcome a "presumptive right of public access." Leucadia v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 164 (3d Cir. 1993).  However, where the motion to seal pertains to discovery motions and related documents, there is no such presumptive right to public access. Id. at 165.  Because a motion to amend a pleading is not a discovery motion, the presumption in favor of public access applies to the documents Iridian now seeks to seal. See id. at 163-64 (providing examples of the kinds of documents which constitute discovery and non-discovery motions).

To overcome this presumption, Iridian must demonstrate that "good cause" exists for the protection of the material at issue.  Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted); see Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  Good cause has not been established where a party merely provides "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).  Furthermore, to prevail, Iridian must make

this good cause showing with respect to each document sought to be sealed. Id. at 786-87.

### A.  General Factors Applicable to Exhibits A, B, and D to the Angell Declaration

Before turning to the four factors outlined in Local Rule 5.3, the Court notes that there are other general considerations which may be relevant to a determination of whether "good cause" exists to protect the exhibits at issue from disclosure. See Glenmede Trust, 56 F.3d at 483 (citing Pansy, 23 F.3d at 767-91) (providing a non-exhaustive and non-mandatory list of potentially relevant considerations).  In the present case, Iridian argues that some of these factors should weigh in favor of granting its motion to seal.  Specifically, Iridian contends that (1) none of the materials at issue involve public entities or matters of public concern; (2) none of the documents are subject to inspection under the Freedom of Information Act or analogous state laws; and (3) the materials were the subject of an agreement between the parties to keep such materials confidential. (Def. Mem. at 3.)

Although these three factors may be relevant considerations in determining good cause, the Court finds that Iridian's allegations with respect to these three factors are insufficient on their own to demonstrate "good cause" to seal the documents in this case.  First, even though Iridian asserts that the materials at issue are the subject of the parties' confidentiality agreements, Securimetrics conversely argues that the material is *not* covered by the parties' confidentiality agreements. (See Pl. Opp. at 2-3, 6, 8.)  Therefore, without further analysis it is unclear whether the parties' confidentiality agreements weigh for or against sealing the exhibits at issue here. Second, although the Court agrees that the non-public nature of the entities and matters involved is one factor that might weigh in Iridian's favor, that factor is insufficient on its own to justify sealing the documents at issue if Iridian has not met its burden of establishing other necessary factors under Local Rule 5.3.  Therefore, the Court must examine each document that Iridian

seeks to seal and determine whether Iridian has met its burden of establishing the four factors

outlined in Local Rule 5.3.

**B.  Exhibit A to the Angell Declaration**

Iridian argues that the deposition excerpts contained in Exhibit A reflect negotiations

strategies and pricing terms which are subject to confidentiality agreements and entitled to

protection from disclosure. (Def. Mem. at 3.)  As far as making a particularized showing of the

serious injury that would result from disclosure of the information in Exhibit A, Iridian makes a

blanket statement regarding the alleged harm that would result if any of the information in

Exhibits A, B, or portions of Exhibit D was disclosed. (Def. Mem. at 5.)  Namely, Iridian

contends that it would suffer serious injury if this information became public because "potential

acquirers of Iridian, suitors seeking licenses from Iridian, and competitors of Iridian would have

access to this confidential financial and business information and technology information that

Iridian and Securimetrics devoted extensive resources in developing and in keeping

confidential." (Def. Mem. at 5.)  In addition, Iridian alleges that public disclosure of the

information would compromise its competitive standing and destroy normal market forces "from

assessing the true value of Iridian, its licenses, and its products." (Def. Mem. at 5.)

In response, Securimetrics argues that the information in the Exhibit A deposition

transcript is not confidential, and additionally, that Iridian has not met its burden of

demonstrating a specific, serious injury that would result from disclosure of that information.

First, Securimetrics contends that the "10%-2% pricing scheme in the parties' Binding Term

Sheet," which is mentioned in Exhibit A, has been referenced repeatedly throughout the

litigation. (Pl. Opp. at 2.)  Until now, Iridian has allegedly never suggested that such information

is subject to any contractual confidentiality provisions. (Pl. Opp. at 2.)  Second, Securimetrics

asserts that the confidentiality agreements between the parties do not cover the price terms in the Binding Term Sheet, which are discussed in the Exhibit A transcript. (Pl. Opp. at 2-3.)  Third, Securimetrics alleges that Iridian has not made any particularized showing as to how disclosure of Exhibit A will cause a serious and clearly defined injury, particularly when the substance of Exhibit A has been previously disclosed in other public filings. (Pl. Opp. at 3-4.)  Although Iridian argues generally that disclosure of any of the exhibits at issue will affect its competitive standing and harm normal marketplace forces, Securimetrics points out that Iridian does not provide any specifics as to how or why disclosure of Exhibit A might bring about those broadly alleged consequences.

The Court finds that Iridian has not met its burden of establishing that Exhibit A is subject to seal.  Of the four factors listed in Local Rule 5.3, factors (a), (b) and (c) weigh against sealing Exhibit A.  First, as to factor (a), the deposition transcripts at issue are attached to the Angell Declaration, which Securimetrics submitted in support of its opposition to Iridian's motion to amend the answer and counterclaim.  In other words, because Exhibit A is not part of a discovery motion, there is a presumption of public accessibility that attaches to the filed exhibit. Leucadia, 998 F.2d at 165.  Accordingly, the nature of the material at issue weighs against sealing the document.

Second, with regard to factor (b) under Local Rule 5.3(c)(2), the parties dispute whether Exhibit A contains confidential information.  On one hand, Iridian states that the parties' confidentiality agreements cover the pricing information contained in Exhibit A; on the other hand, Securimetrics states that the confidentiality provisions do not apply.  However, neither party attached the relevant confidentiality provisions to their motion papers nor made any clear showing as to the applicability of the confidentiality provisions.  In addition, the pricing terms

discussed in the deposition transcript appear to have been previously revealed in Securimetrics'

prior filings, including the Complaint. (See Complaint ¶ 8.)  Iridian's argument that it has a

legitimate privacy interest in the confidentiality of the pricing terms in the Binding Term Sheet

seems unpersuasive when (1) those same terms have already been revealed to the public in

previous court filings, and (2) Iridian failed to provide any analysis as to the applicability of the

relevant confidentiality agreements.

Furthermore, Iridian has not shown that the pricing terms or negotiations discussed in

Exhibit A rise to the level of trade secrets or similarly protected information.  A trade secret is

"any formula, pattern, device, or compilation of information which is used in one's business, and

which gives him an opportunity to obtain an advantage over competitors who do not know or use

it." See Restatement (Second) of Torts, § 757, cmt. b.  Iridian has presented no evidence, either

by affidavit, citation to legal precedent, or otherwise, to suggest that the information discussed in

Exhibit A is a trade secret or is otherwise deserving of protection. Cf. In re Gabapentin Patent

Litigation, 312 F. Supp. 2d 653, 665 (D.N.J. 2004) (finding that Magistrate properly maintained

information designated as trade secrets under seal where the moving party presented detailed

affidavits and declarations setting forth the nature of their trade secrets and the specific harm that

would be suffered upon disclosure).  Given that (1) the pricing terms discussed in Exhibit A have

already been revealed in prior filings, and (2) Iridian has failed to otherwise demonstrate a

legitimate claim of confidentiality in the information at issue, the Court finds that factor (b)

under Local Rule 5.3(c)(2) weighs against sealing Exhibit A.

Third, as to factor (b) under Local Rule 5.3(c)(2), Iridian has failed to allege with

sufficient specificity the serious and clearly defined injury that may result if Exhibit A is publicly

disclosed.  Iridian's motion contains broad allegations of harm relating to its competitive

standing and the operation of the general marketplace, which it contends would occur if all of the

exhibits at issue are not sealed. (Def. Mem. at 5.)  However, the motion does not substantiate

these broad allegations with specific examples or articulated reasoning regarding how the

disclosure of Exhibit A would cause that harm. See Pansy, 23 F.3d at 786.  The failure to

articulate the specific harm is compounded by the fact that the deposition excerpt does not appear

to contain any previously undisclosed "confidential financial and business information and

technology information." (See Def. Mem. at 5.)  Therefore, the analysis of factor (c) as to Exhibit

A weighs against sealing the exhibit.

Finally, with respect to factor (d) under Local Rule 5.3(c)(2), Iridian argues that it is

proposing the least restrictive alternative because it is only seeking to seal the portions of "the

Angell Declaration that are exhibits of highly confidential documents." (Def. Mem. at 5.)

Nevertheless, because factors (a), (b), and (c) weigh against sealing, the Court will deny Iridian's

motion with respect to Exhibit A to the Angell Declaration.[4]

### C.  Exhibit B to the Angell Declaration

With respect to Exhibit B, Iridian argues that the Kuhla, Levin, and Intzekostas

documents are subject to seal because they contain sensitive attorney-client communications and

confidential pricing computations. (Def. Mem. at 4.)  Iridian makes the same general allegations

of harm regarding Exhibit B as it did for Exhibit A.  That is, Iridian claims that if the allegedly

confidential information in Exhibit B is disclosed to the public, it would severely compromise

---

[4] The Court will not re-visit factor (d) as to each of the exhibits at issue here.  As to all of the exhibits currently at issue, Iridian argues that sealing portions of the exhibits is the least restrictive means of protecting the information at issue.  However, the Court finds that, with respect to all of the exhibits at issue, Iridian has not met its burden as to factors (a), (b), and (c) under Local Rule 5.3(c)(2).  Therefore, the least restrictive means argument will not suffice to justify sealing the documents currently at issue.

Iridian's competitive standing and the normal market forces that determine the true value of Iridian, its licenses, and products. (Def. Mem. at 5.)

Despite these assertions, the Court finds that Iridian fails to show good cause to seal the Kuhla Memorandum, the Levin Memorandum and the Intzekostas Email.  There are significant disputes regarding whether these documents are subject to attorney-client privilege, but even putting aside these privilege issues, the Defendant still fails to allege the particularized harm that would result from public disclosure of each of these three documents.

Like all of the other exhibits at issue here, the Kuhla Memorandum, the Levin Memorandum and the Intzekostas Email have been submitted in conjunction with a non-discovery motion.  Therefore, factor (a) under Local Rule 5.3(c)(2) weighs against sealing because the nature of the documents creates a presumptive right of public access.  See Leucadia, 998 F.2d at 165.

As to factor (b) under Local Rule 5.3(c)(2), Iridian has probably not demonstrated a legitimate interest in keeping the Kuhla, Levin, and Intzekostas documents under seal.  Iridian states that these documents contain "sensitive and internal attorney-client communications about the interpretations of these agreements," and further that the documents show "pricing computations . . . which is [sic] made confidential by the parties' contracts . . . ." (Def. Mem. at 4.) However, aside from these conclusory allegations, Iridian provides neither legal argument nor documentary evidence to support its assertions.  See Brown v. Smythe, Civ. No. 90-3815, 1991 WL183578, at *4 (E.D. Pa. Sept. 12, 1991) (noting that a conclusory allegation of attorney-client privilege is insufficient to meet the defendants' burden of establishing the confidentiality of the documents it seeks to protect from disclosure).

In contrast, Securimetrics challenges the confidentiality of the Kuhla, Levin and

Intzekostas documents.  Specifically, Securimetrics argues that Iridian waived any claim to privilege or confidentiality with respect to these memoranda because Kuhla allegedly discussed their contents with Securimetrics' CEO, David Peterson. (See Pl. Opp. at 6-7.)  Alternatively, Securimetrics argues that Iridian waived any privilege claim by placing the contents of the Levin and Intzekostas documents at issue in this case.  In other words, Securimetrics asserts that Iridian placed the contents of the documents at issue when Iridian made allegations that Kuhla and Peterson conspired to harm Securimetrics by spreading an absurd interpretation of the Iridian-Securimetrics agreements, which was "contemporaneously disavowed" by Iridian's Board of Directors. (Pl. Opp. at 5, 7.) On this point, Securimetrics argues "Iridian cannot accuse Kuhla and his 'co-conspirators' of fraud and treachery and then deprive them use of the documents and information to exonerate them." See Pl. Opp. at 7.; see also United States v. Bilzerian, 926 F.2d 1295, 1292 (2d Cir. 1991) (noting that attorney-client privilege cannot be simultaneously used as a shield and sword and that the privilege may be implicitly waived when a party asserts a claim that in fairness requires examination of protected communications) (citations omitted).

However, at this juncture, the Court cannot rule upon whether the Kuhla, Levin and Intzekostas documents, in whole or in part, are subject to privilege or whether Iridian has waived that privilege.  Some of these waiver arguments may be ultimate questions for the jury, or at the very least would likely involve an evidentiary hearing where the parties would present testimony and other documentary evidence to support their positions on the issue.[5]  Here, the parties have

---

[5] The Court notes that in an Order and Opinion dated December 8, 2004, Judge Donio addressed similar privilege arguments in the context of a motion to compel production of the Kuhla, Levin, and Intzekostas documents.  Judge Donio found that an evidentiary hearing would be necessary to determine whether Iridian waived privilege with respect to (1) the Levin Memorandum, (2) the Intzekostas Email, and (3) those portions of the Kuhla Memorandum that reference communications of counsel when Kuhla allegedly discussed the information set forth in the memoranda with Securimetrics' CEO, Greg Peterson.  The evidentiary hearing was never

merely made contradictory assertions without providing sufficient evidence to support a determination either way.

Furthermore, even the parties' bald allegations are not completely comprehensible on this privilege issue. For instance, Iridian asserts that the documents are protected attorney-client communications, but Iridian has already fully disclosed the contents of those documents to Securimetrics under some kind of informal agreement to produce. Neither party provides any discussion or analysis as to whether this constitutes a waiver of privilege under New Jersey law. In addition, Securimetrics argues that Iridian cannot use the documents as a shield and sword by placing the contents of the documents at issue in the litigation, and then depriving Securimetrics "use of the documents and information that exonerate them." (Pl. Opp. at 7.) This argument also seems convoluted because Securimetrics has already received the full contents of both documents and has used both documents as exhibits to its Opposition to Iridian's Motion to File a Fourth Amended Answer and Counterclaim. In other words, the issue here is not whether Iridian has asserted privilege as a means to preclude its adversary from obtaining or using the information at issue. Rather, the issue on the current motion to seal is whether the information that has already been revealed to Securimetrics should also be revealed to the public. The present inquiry is not coextensive with the privilege inquiry because even if the Exhibit B documents are not privileged, that does not necessarily mean that they are not subject to seal.

In any event, due to disputed allegations and lack of evidence presented on the privilege/waiver issues and the nature of the Court's inquiry on a motion to seal, the Court cannot presently determine the privilege status of the Levin Memorandum, the Intzekostas email, and

---

held because the parties reached an agreement whereby Iridian would voluntarily produce the memoranda to Securimetrics while reserving the right to assert privilege at a later date. (See Def. Mem. at 4.)

those portions of the Kuhla Memorandum referencing communications from counsel.  Therefore,
the Court must look to Iridian's other basis for establishing the confidentiality of these
documents.

    As an alternative to the privilege argument, Iridian contends that the Kuhla, Levin and
Intzekostas documents contain pricing information "made confidential by the parties' contracts."
(Def. Mem. at 5.)  By contrast, Securimetrics asserts that the pricing information in the Kuhla
Memorandum is not subject to the parties' confidentiality agreements, and further that the royalty
terms discussed in the Kuhla Memorandum were publicly revealed in the Complaint years ago.
(See Pl. Opp. at 6.)  To complicate matters, Iridian does not attach the relevant confidentiality
provisions of the parties' contracts to its motion papers or explain to the Court how or why those
provisions apply here. Without any discussion or analysis as to why the pricing information
should be confidential, particularly when Securimetrics argues that the information is not
confidential and has been previously disclosed, it appears that Iridian has not met its burden to
demonstrate a legitimate interest in keeping the documents from public disclosure.[6]  At best,
Iridian relies upon disputed and unsupported allegations of privilege and confidentiality to
establish its legitimate interest in keeping the Exhibit B documents from public disclosure.
Therefore, factor (b) under Local Rule 5.3(c)(2) seems to weigh against sealing the Kuhla, Levin
and Intzekostas documents.

    However, even if the Court assumes Iridian's confidentiality arguments are legitimate,
Iridian has still failed to make a particularized showing of harm that would result if the Kuhla,

---

[6]In addition, the Court notes that much, if not all, of the "pricing information" that
appears in the Levin Memorandum relates to the 10%-2% pricing structure which has already
been revealed in public filings like the Complaint.  Also, contrary to Iridian's assertions, the
Intzekostas email does not actually contain any pricing information.

Levin and Intzekostas documents were publicly disclosed. Although Iridian makes generalized allegations of harm that might occur if all of the exhibits at issue were revealed, Iridian does not specifically articulate through concrete reasoning the particular harm associated with public disclosure of each of these three documents. (See Def. Mem. at 5.)  The broad, blanket allegations of harm regarding Iridian's "competitive standing" and "normal market forces" are insufficient to satisfy this jurisdiction's particularized harm requirements. See Pansy, 23 F.3d at 786-87 (noting that a party must provide specific allegations of harm, supported by specific examples and articulated reasoning, as to each document the party seeks to keep from disclosure).

Overall, the relevant factors weigh against sealing the Kuhla, Levin and Intzekostas documents.  Iridian has not met its burden of showing good cause to seal the documents because it has not shown that the documents contain clearly confidential information.  Nevertheless, even assuming Iridian had shown a legitimate interest in the confidentiality of the documents, it failed to articulate with sufficient specificity the harm that would occur if the documents were publicly disclosed.  Therefore, the Court will deny Iridian's motion with respect to the documents comprising Exhibit B to the Angell Declaration.

### D.  Exhibit D attached to the Angell Declaration

Like Iridian's allegations with respect to Exhibits A and B, Iridian's allegations regarding Section 2 of Exhibit D to the Angell Declaration are insufficient under Local Rule 5.3.  As with the other exhibits, a presumptive right of public access arises with respect to Exhibit D because the Angell Declaration was filed in support of a non-discovery motion. Leucadia, 998 F.2d at 165; see L. Civ. R. 5.3(c)(2)(a).  Iridian has failed to overcome that presumption.

First, Iridian has not demonstrated that Section 2 of Exhibit D contains confidential

information that warrants protection from public disclosure.  Securimetrics argues:

> Section 2 of Exhibit D details the scope of the license granted by Iridian to
> Securimetrics.  As with other terms of the contracts, an express confidentiality
> clause governs these protections, and for either competitors or other suitors of
> Iridian seeking licenses, to learn the exact scope of the license granted to
> Securimetrics, would unfairly prejudice Iridian.

(Def. Mem. at 4.)  Regrettably, Iridian's discussion of the alleged confidentiality of Section 2

ends there.  Iridian does not discuss or attach the "express confidentiality clause" that allegedly

governs the scope of the license granted to Securimetrics.  This oversight is particularly

problematic because Securimetrics makes a contrary argument that there is no "contractual

prohibition against the disclosure of the perpetual and irrevocable license grant to Securimetrics

in Section 2 of the TLA." (Pl. Opp. at 8.)  In addition, the confidentiality provision in the TLA

mentioned in footnote 1 of Iridian's brief apparently only applies to "information or data

developed pursuant to the relationship created hereunder." (See Def. Mem. at n.1; Pl. Opp. at 8.)

Without any argument or analysis from Iridian as to why this confidentiality provision would

preclude public disclosure of the terms of the irrevocable license granted to Securimetrics, it

appears that this confidentiality provision applies only to the information and data developed

between the parties *as a result* of the licensing agreement, and not to the actual terms of the

license itself.  In any event, Iridian carries the burden of demonstrating a legitimate interest in

protecting this information from disclosure, and the unsupported conclusions in the above-quoted

passage are insufficient in that regard to overcome the presumptive right of public access. See

Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 129 F.R.D. 483, 486 (D.N.J. 1990) (finding that a

party's "broad and conclusory allegations" indicate a "total absence of specificity from which

this Court can find that these documents are confidential and if so what harm would result from

their disclosure"); Danilo v. Healthhelp, Inc., No. 01-cv-5625, 2002 WL 32345697, at *4-5 (E.D.

Pa. July 3, 2002) (noting that a party's conclusory allegations are insufficient to establish the confidentiality of materials that party seeks to protect from disclosure during discovery).

Second, Iridian has not made a particularized showing of harm that would result from public disclosure of Section 2.  As mentioned above, in alleging harm, Iridian lumps Exhibits A, B, and D together and makes general allegations of harm that might result if all three exhibits were disclosed.  (See Def. Mem. at 5.)  However, contrary to Iridian's blanket assertion, the court notes that Section 2 of Exhibit D does not describe pricing terms, negotiating strategy, internal business deliberations or attorney-client communications. (*Compare* Def. Mem. at 5, *with* Section 2 of Exhibit D to Angell Declaration.)  Moreover, there is literally no discussion or explanation as to how disclosure of Section 2 would "unfairly prejudice" Iridian or compromise its "competitive standing" or "normal market forces."(See Def. Mem. at 4-5.)  Absent the required showing of particularized harm, Iridian fails to establish good cause to seal Section 2 of Exhibit D to the Angell Declaration.

As with Exhibits A and B, Iridian has not adequately demonstrated the confidentiality of Section 2 or the specific harm that would result from public disclosure of Section 2. Consequently, the Court will deny Iridian's motion to seal portions of Exhibit D to the Angell Declaration.

**III. CONCLUSION**

For the reasons set forth above, the Court will deny Iridian's motion to seal.  The accompanying Order shall issue today.


Dated:   3/30/06                                         S/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge